# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARGARET LEWIS, | : | |
| Plaintiff, | : | Case No. 3:11cv00022 |
| vs. | : | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Margaret Lewis sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in April 2006, alleging disability since October 9, 2005[2]. (Doc. # 6-5, *PageID##* 180-85). She claims disability from brittle diabetes, high blood pressure, and symptoms of depression. (Doc. # 6-6, *PageID##* 213, 245).

After various administrative proceedings, Administrative Law Judge ("ALJ") Amelia G. Lombardo, denied Plaintiff's DIB application based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Plaintiff amended her disability onset date to the day before her 50th birthday, September 8, 2007. (*See* Doc. # 9-1, *PageID##* 901-03).

Security Act. (Doc. # 6-2, *PageID##* 53-67). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. # 9), the Commissioner's Memorandum in Opposition (Doc. # 12), Plaintiff's Reply (Doc. # 14), the administrative record (Doc. # 6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits because the ALJ's decision was not based on substantial evidence. In the alternative, Plaintiff seeks an Order remanding the ALJ's decision to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. BACKGROUND

### A. Plaintiff's Vocational Profile and Testimony

Plaintiff turned 50 years old on September 9, 2007. Thus, she is considered to be "closely approaching advanced age" for purposes of resolving her DIB claim. *See* 20 C.F.R. § 404.1563(d); *see also* Doc. # 6-2, *PageID#* 65, Doc. # 6-6, *PageID#* 208. Plaintiff has a "limited" eighth grade education in special education classes. (Doc. # 6-6, *PageID##* 219, 293, 296-303). She has worked as an assembler, in a fast food restaurant, floor associate at a retail store, and janitor. (Doc. # 6-6, *PageID##* 214, 221-29).

Plaintiff testified at the administrative hearing[3] that she had a valid driver's license, but limited her driving to "in town only." (Doc. # 6-2, *PageID#* 89). She last worked in 2005 at Wal-Mart. (Doc. # 6-2, *PageID#* 90). Plaintiff also testified that she was diagnosed with diabetes in 2003 after finding out her blood sugar levels were 200. (Doc. # 6-2, *PageID#* 91). She was on a 1,500 calorie diet and took Lantus and Novolog insulin injections. (Doc. # 6-2, *PageID#* 92). She saw her physician, Dr. Williams, once every three months, and had gone to the emergency room nine days prior to the hearing when she experienced a rapid heartbeat. (Doc. # 6-2, *PageID#* 93). Plaintiff reported when her blood sugars are high she wants to sleep, and when her blood sugars get low she breaks out into a sweat and does not know where she is. (Doc. # 6-2, *PageID#* 107). Plaintiff further testified to having neuropathy, with a tingling sensation in the bottom of her feet that extends to her knees. (Doc. # 6-2, *PageID#* 105).

Plaintiff testified that she had a pacemaker implanted in 2007, prior to the hearing she had it checked, and "everything looks fine." (Doc. # 6-2, *PageID##* 95-96). She also received steroid injections in her back from Dr. Soin at a pain center. (Doc. # 6-2, *PageID#* 97).

Plaintiff further testified regarding her depression. (Doc. # 6-2, *PageID#* 97). She noted she was under "a lot of stress." (*Id.*). At the time of the hearing, she was not taking

---

[3]Because resolution of the issues presented in this case do not turn on the vocational expert testimony, the Court will not summarize the vocational expert testimony presented at the administrative hearing.

any medications and had stopped going to the TCN Behavioral Health Center because she could not pay for the services. (Doc. # 6-2, *PageID##* 98-99).

Plaintiff estimated that she could walk for 15-20 minutes and stand for about 5-10 minutes. (Doc. # 6-2, *PageID#* 100). She did not feel that she could lift more than five pounds because it would put a strain on her back and irritate her for the rest of the day. (Doc. # 6-2, *PageID#* 101). She reported she could do housework when she was able to do so – about two to three days each week. (*Id.*). She acknowledged that she cooked for herself and her husband. (*Id.*). She went to the store with her husband once every two weeks, but frequently left the store due to panic attacks. (Doc. # 6-2, *PageID#* 102).

Plaintiff's activities included playing guitar at her church, (Doc. # 6-2, *PageID#* 98), collecting figurines of turtles and frogs, and looking things up on the computer. (Doc. # 6-2, *PageID#* 103).

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence which eliminates the need for a repeated description here. (*See* Doc. # 9 at 3-12; Doc. # 12 at 5-9). Where applicable, the Court will identify the medical evidence relevant to its decision.

### III. ADMINISTRATIVE REVIEW

#### A. **"Disability" Defined**

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the

Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

**B.**     **Social Security Regulations**

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Doc.# 6-2, *PageID##* 53-55; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

5

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity,[4] can he perform his past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C. **ALJ Lombardo's Decision**

ALJ Lombardo's pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff has the severe impairments of diabetes mellitus; osteoarthritis of the lumbar spine; residuals of bradycardia and pacemaker placement; anxiety; and depression. (Doc. # 6-2, *PageID#* 55). The ALJ determined that Plaintiff's mild neuropathy and alleged radiculopathy, vision problems, carpal tunnel syndrome, celiac disease and migraines, considered singly and in combination, do not cause more than minimal limitations in Plaintiff's ability to perform basic work-related activities and are therefore nonsevere. (*Id.*, *PageID#* 57).

---

[4]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings. (Doc. # 6-2, *PageID#* 60).

At Step 4, ALJ Lombardo concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work[5] with the following limitations: no heights, hazardous machinery or commercial driving; occasional balancing; no ladders, ropes or scaffolds and the option to change positions between sitting and standing every 30 minutes. (*Id.*, *PageID#* 60). She also found Plaintiff was limited to unskilled, low stress work, and minimal contact with the general public due to her severe mental impairments. (*Id.*).

The ALJ concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a sales clerk. (Doc. # 6-2, *PageID#* 65).

At Step 5, the ALJ used sections 202.18 and 202.11 of the Grid[6] as a framework, and considering Plaintiff's age, education, work experience, and RFC, found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform on a sustained basis. (Doc. # 6-2 , *PageID##* 65-66).

The ALJ's findings throughout her sequential evaluation led her to ultimately

---

[5] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. § 404.1567(b).

[6]*See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.

conclude that Plaintiff was not under a disability, and was therefore not eligible for DIB. (Doc. # 6-2, *PageID##* 66-67).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[Even if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V. **DISCUSSION**

A. **Plaintiff's Contentions**

Plaintiff assigns two errors in this case. First, Plaintiff contends that she is physically more limited than found by the ALJ, as documented by the medical expert testifying at the hearing, and the record. (Doc. # 9 at 14). According to Plaintiff, the ALJ's analysis essentially relies on her own lay interpretation of the medical evidence. (*Id.*). Next, Plaintiff argues that the ALJ erred in her evaluation of treating psychiatrist, Dr. Houseknecht's opinion. (*Id.* at 17).

B. **Medical Source Opinions**

1.

**Treating Medical Sources**

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's

9

opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.927(d), (f); *see also* Ruling 96-6p at *2-*3.

**2.**

### Non-Treating Medical Sources

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id*. at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(f); *see also* Ruling 96-6p at *2-*3.

### C. Analysis

Plaintiff's challenge to the ALJ's decision focuses primarily on the ALJ's handling of the testimony of medical expert Dr. Chevalier. Observing that a pacemaker implant, "in itself does not equal disability," Dr. Chevalier nonetheless felt that, "it certainly does alter the ability of the patients where they would have to be expected to probably a lighter level of physical capacity, and there would be certain perhaps exposures to some sorts of electrical stimulation that should be avoided." (Doc. # 6-2, *PageID#* 82).

Dr. Chevalier also testified that Plaintiff suffers from brittle diabetes, which "means that you get wide variations in the blood sugars, very high and then often times

11

very low … you have trouble getting control of it." (Doc. # 6-2, *PageID#* 86).  Dr. Chevalier testified that anytime you are talking about blood sugars above 400 it indicates a brittleness to the diabetes – "She's hard to control."  (*Id.*).  Dr. Chevalier testified that normal blood sugar would range from 80 to 120.  (Doc. # 6-2, *PageID#* 76).  Dr. Chevalier indicated the A1C is a "test that measures the approximate blood sugars over 6-7 week period, and normal values for that are 6 or under." (Doc. # 6-2, *PageID#* 75).  Dr. Chevalier further indicated, "ketoacidosis is a situation where the pH of the blood, which has to be fairly tightly controlled, gets out of control because of the elevated blood sugar." (Doc. # 6-2, *PageID#* 75).  Dr. Chevalier noted this was a "significant problem" for Plaintiff in 2006, and evidenced as far back as October 2004.  (*Id.*).

Dr. Chevalier also referred to a cardiac catheterization that found no significant coronary heart disease.  (Doc. # 6-2, *PageID#* 80).  Although Dr. Chevalier acknowledged that he could not access Plaintiff's complete record, he testified that based on the combination of Plaintiff's impairments, she would be limited to sedentary work.  (Doc. # 6-2, *PageID##* 82-83).  Dr. Chevalier was concerned with the fluctuations in A1C and problems with extremes in glucose readings.  (Doc. # 6-2, *PageID##* 84-85).  He acknowledged, however, that people who have brittle diabetes do have trouble getting control of it:  "People with that type of diabetes really kind of become wedded to the blood sugar levels, and you know, they are glucose testing and that sort of thing in order to maintain a reasonable range so that they can function." (Doc. # 6-2, *PageID#* 86).  Pressed further, Dr. Chevalier could not state why Plaintiff's diabetes was not controlled,

"whether that is induced by the patient being noncompliant or whether there's something else involved, it's impossible for me to say. But these are just unacceptable levels of blood sugar control for an individual." (*Id.*).

In discounting Dr. Chevalier's expert opinion limiting Plaintiff to sedentary exertion work, the ALJ gave his opinion "little weight" finding it "inconsistent with claimant's description of activities and the medical evidence of record." (Doc. # 6-2, *PageID#* 62). She cited to a CT scan that showed no herniation or stenosis; neuropathy noted as mild and helped with medication; an EMG that showed no evidence of radiculopathy; and a treatment note from a cardiologist that indicated Plaintiff was doing well with the placement of her pacemaker. (*Id.*). The ALJ's failure to recognize Plaintiff's diabetes fundamentally flawed her analysis of the opinion of Dr. Chevalier, because she essentially ignored other evidence concerning Plaintiff's medical problems.

The ALJ's evaluation of Dr. Chevalier's opinions failed to adhere to the legal criteria mandated by applicable law. An ALJ may not ignore evidence favorable to the Plaintiff, but "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000) (citing *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984)). Although the Regulations generally give more weight to the opinions of examining medical sources than to the opinions of non-examining medical sources, *see* 20 C.F.R. § 404.1527(d)(1), the opinions of non-examining medical experts or state agency medical consultants still have potential probative value. Accordingly, ALJs must evaluate the

13

opinions of nonexamining medical experts under numerous factors described in the Regulations, including "supportability," "consistency," and "specialization." *See* 20 C.F.R. § 404.1572(d), (f).

Speaking through the Rulings – which "are binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1) – the Commissioner emphasizes:

> [T]he opinions of State agency medical . . . consultants . . . and other program physicians . . . can be given weight only insofar as they are supported by substantial evidence including any evidence in the case record,
> considering such factors as the supportability of the opinion . . ., the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical . . . consultant . . . or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996).

A review of the administrative decision reveals that, in discussing Dr. Chevalier's opinion, ALJ Lombardo made no mention of his specialization as a cardiologist, nor did she acknowledge his opinion's consistency with other record evidence – including, for example, the opinion of treating physician, Dr. Williams. Dr. Williams is an internist, who specializes in endocrinology/diabetes & metabolism[7]. Dr. Williams began treating Plaintiff for diabetes in May 2008. (Doc. # 6-10, *PageID##* 818-22). Dr. Williams sent

---

[7]*See* https://license.ohio.gov

14

Plaintiff for a nutritional assessment with a dietitian due to diabetes and celiac disease. (Doc. # 6-10, *PageID##* 823-24). Dr. Williams' records show that Plaintiff's diabetes remained brittle, and she continually adjusted her insulin. (Doc. # 6-10, *PageID##* 805-13, 815). In March 2009, after finding ketones in Plaintiff's urine, along with low blood sugar, Dr. Williams sent her to the emergency room. (Doc. # 6-2, *PageID##* 759-60, 806). On March 23, 2009, Plaintiff informed Dr. Williams she was applying for disability and Dr. Williams noted she agreed with the severity of her chronic disease. (Doc. # 6-2, *PageID#* 805). Accordingly, Dr. Chevalier's opinion was consistent with other medical evidence of record.

Even if the ALJ's decision could be reasonably read as applying the correct legal criteria, a more significant error looms throughout her discussion of the evidence of record and the opinions of Drs. Chevalier and Williams. Specifically, the ALJ did not rely on medical source opinion or other evidence of record to support her conclusion that Plaintiff was capable of light exertional work which was limited by no heights, hazardous machinery or commercial driving; occasional balancing; no ladders, ropes or scaffolds and the option to change positions between sitting and standing every 30 minutes. (*See* Doc. # 6-2, *PageID##* 60-63). The ALJ instead relied on what she believed was "reasonable when viewed within the context of the entire record." (*Id.*, *PageID#* 62). This, however, was simply her lay understanding of the medical record. An understanding, moreover, that was directly contrary to the opinion of Dr. Chevalier (the medical expert whose opinion about Plaintiff's inability to perform beyond sedentary

15

exertion was consistent with the opinions of her treating specialist, Dr. Williams). The only other opinion evidence of record was that of a state agency physician who reviewed the file in March 2007, and found that Plaintiff could perform medium work exertionally. (Doc. # 6-7, *PageID##* 392-99). Since this state agency opinion was rendered in March 2007, it occurred before much of the evidence was in the record, including a second hospitalization for ketoacidosis, the implant of a pacemaker, and an EMG documenting neuropathy. However, the ALJ failed to state what weight she gave this opinion.

The ALJ erred by drawing her own conclusions from the same medical evidence on which Dr. Chevalier relied. Case law recognizes that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Additionally, the Sixth Circuit has noted that "[s]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004). Given the existing record, this Court can only deduce that the ALJ's RFC finding was based on the ALJ's own interpretation of Plaintiff's capabilities, not on the evidence.

Because the ALJ failed to follow the Regulations in analyzing the medical opinions of record; failed to accord any weight to the opinions of the medical expert or treating physician; and because her basis for rejecting Dr. Chevalier's opinion lacks substantial support in the record; the ALJ's RFC finding is not supported by substantial evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).

16

The question becomes, however, what level of work Plaintiff is capable of performing. As noted above, the ALJ determined that Plaintiff is capable of performing a limited range of light work. However, the Court is unable to determine how the ALJ supported such a finding. In contrast, Dr. Chevalier's opinion as to Plaintiff's RFC is arguably consistent with an ability to perform a limited range of sedentary work.

Accordingly, because the ALJ made a medical judgment without any supporting evidence, remand is needed to correct this error.[8]

## VI. REMAND IS WARRANTED

If an ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of a disability is not

---

[8] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Due to the errors outlined above, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g). On remand, the ALJ should be directed (1) to re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) to reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB. Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Margaret Lewis was under a "disability" within the meaning of the Social Security Act;

3. This case be **REMANDED** to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


February 3, 2012                              s/Sharon L. Ovington
                                                                           Sharon L. Ovington
                                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).